STAPLES, J.,
delivered the opinion of the court.
The defendant in error, being the surety of Robert W. Snead, on a bond to John D. Davis, gave written notice to Davis to sue upon the bond. Davis, it is conceded, was not the owner of the debt, or personally interested in it, but was merely a commissioner and receiver, appointed under a decree of court, to make sale of property, to take bonds for the purchase money, and collect the same when due. The question we are to determine is, whether the defendant is released from his obligation by the failure of Davis to bring suit, and prosecute the same with due diligence to judgment and execution.
The decision of that question depends upon the true intent and meaning of the statute relating to sureties found in fourth and fifth sections, chapter 143, Code 1873. It is there provided that the surety, &c., of any person bound by any contract may if a right of action has accrued thereon, require the creditor, or his personal representative by notice in writing, forthwith to institute suit thereon. If such creditor or his representative shall not in a reasonable time institute suit against every party to such contract, who is a resident of the State, and not insolvent, and prosecute the same with due diligence to judgment and execution, he shall forfeit his right to demand of such surety or his estate, and all his co-sureties and their estates, the money due by such contract. This statute is substantially the same as that of 1794 found in the revised Code 1819, page 461, except that in the latter act it is *576 provided it should not be so construed as to affect *bonds with collateral conditions, or the bond that may be entered into by guardians, executors, administrators, or public offices. Whereas, under the present statute, 'bonds with collateral conditions may be the subject of notice as in other cases, the revisors of 1849, no doubt regarded the saving with respect to official bonds as altogether unnecessary, as by no reasonable intendment could the statute be construed as applying to that class of securities.
This statute of 1794, was the first enactment ever adopted in Virginia, authorizing notice by a surety to a creditor to sue, and imposing upon the latter a forfeiture of all claims against the surety as a consequence of his failure to comply with the requisition.
The provision was no doubt intended in some measure as ^ substitute for the bill quia timet in a court of equity. In Wright’s adm’r v. Stockton, 5 Leigh 179, Judge Carr said, “The mischief intended to be provided against by the statute was that a creditor having his debt secure, and being careless whether he made it out of the debtor or the surety, would often delay till the debtor became insolvent, and the whole burden was thrown on the surety. Nor has he any mode of protection except by the tedious and expensive proceeding of a bill quia timet in equity.
It will be observed that both by the act of 1794, and the present statute, the notice must be given to the creditor himself, and in the event of his death, to his personal representative. Under various provisions contained in the Code, proceedings may be instituted against a creditor or other persons by notice to his agent or attorney. But under the statute we are now considering, no such indulgence is allowed. The reason is obvious. The statute is very stringent in its operation. The effect of the failure tip- sue after notice is an absolute forfeiture of all claims against every *surety upon the bond, or other instrument. It is to such surety an absolute extinguishment of the debt. It was therefore wisely provided, that the notice should be given to the creditor himself, and him only; and the release of the surety should be the result of the creditor’s act and his only.
What then .is meant by the word “creditor,” both in legal proceedings and in popular acceptation? He is the person to whom the debt is owed; who has the absolute control of it. He may, if he pleases, release one or all of the parties; and if by his failure or refusal to do an act required by law, a forfeiture ensues, it is his loss and his only. As no one else can release the debt, so no one else can, without his consent, involve him in a forfeiture.
Is a commissioner or receiver appointed in the course of a judicial proceeding to collect money belonging to the court, a creditor within the true meaning and intent of the statute? Is he a creditor at all in any just acceptation of the term? Certainly the mere authority to collect does not make him so, any more than in the case of an attorney at law. or sheriff or other mere ministerial officer.
A receiver, whether general or special, is generally recognized as an officer of the court. He is frequently spoken of as “the hand of the court;” and the expression aptly designates his functions, as well as the relation he sustains to the court. The property and money in his hands are in the possession and under the control of the court, and cannot be molested; or in any manner interferred with, except with its consent, by any other tribunal.
As was said by the. supreme court of the United States in Booth v. Clark, 17 How. U. S. R. 331, the receiver is but the creature of the court; he has no powers except what are conferred upon him by the *order of his appointment, and the course and practice of the court. He cannot even institute or defend actions except by authority. Wilson v. Simpson, 4 How. U. S. R. 709. In Beverley v. Brooke, 4 Gratt. 187, Judge Baldwin said: “A receiver is the officer and representative of the court, subject to its orders, accountable in such manner and to such persons as the court may direct, and having, in his character of receiver, no personal interest but that arising out of his responsibility for the correct and faithful discharge of his duties. See also 2 Davis C. Pleas 1715-16, 1143; Goss v. Southall, rec’r, 23 Gratt. 825.
Nor are the powers of the receiver at all varied or increased by the fact that he is the obligee in the bond. The legal title and right of action are thereby vested in him; but he cannot sue except by the direction of the court which appointed him, and whose agent he is. He may any time be superseded and another appointed in his place to collect the money. Clarkson v. Dodridge, 14 Gratt. 42. By the sixth section of chapter 13, Code 1873, it is provided that every bond required by law to be taken, or approved by or given before any court, board or officer, unless otherwise provided for, shall be made payable to the commonwealth of Virginia. Un~ dpr this section a receiver’s bond may, and ought to be made payable to the commonwealth. It might with equal propriety be contended that where the bond is so pay-, able, the commonwealth is the creditor, as that the receiver is the creditor where the bond is payable to him.
In all judicial sales the court is regarded as the vendor and contracting party, on the one hand, and the purchaser on the other. If the bond is payable to a commissioner or receiver, it is only so from the necessity of the case, because the court can act only through the instrumentality of its officers and agents, and *because there must be some one who in behalf of the court, may if need be bring the action at law.
The fact is, the entire authority of the receiver is limited to the single duty of collecting and paying over the money, and all who deal with him must be held to under *577 stand the precise nature and extent oí his powers.
To speak of such a person as a creditor involves a confusion of terms. If he be a creditor what are his powers as such? May he transfer or assign the debt or the bond? May he release, or compromise, or give ac-quittances without payment? May the claims be attached or garnished in his hands? None of these things will be pretended, and yet according to the present pretension, the receiver may do indirectly what it is conceded he cannot do directly; he may by mere inaction or neglect surrender or forfeit a security provided by the court for the protection of trust funds.
Let us suppose no statute had been ever passed authorizing a surety to give notice to a creditor, what would have been the remedy of this defendant, or any other surety similarly situated, who might apprehend loss or damage from the insolvency of his principal? All that he could do would be to file his petition in the court which appointed the receiver, asking such relief as was proper and necessary to his protection as surety. He must have pursued this course, or he must have filed an original bill in a court of equity in the nature of a bill quia timet. In either case, I apprehend, whether he proceeded by bill or petition, the real parties in interest— the parties entitled to the fund — must have been the parties to whom the notice was given, and upon whom the demand to sue is made. In such a case, no one supposes the receiver would be a necessary party, for the simple reason, he is a mere officer of the court, having no sort of personal interest in the subject-matter. Now. the statute we have been considering us merely cumulative. It was designed as a more expeditious and cheaper remedy for certain classes of sureties than the bill quia timet. But no change of parties was intended; the person who would be the party to the bill quia timet must be the person to whom the notice is given under the statute. That person is the creditor — the one to whom the debt is owing, and upon whom the forfeiture may justly be imposed.
It has been asked, what is the remedy of the surety in cases like the present, if the benefit of the statute is denied him? I do not say that such a surety cannot proceed under the statute. Tf he can do so at all, it is only by giving notice to the proper party, and that party is the creditor. But a more satisfactory answer has already been suggested. The surety may apply by petition to the court which has control of the receiver, and that court will always afford such relief as is just and equitable and consistent with the rights of all parties. It will be for that court to determine whether it will require the principal to pay the debt or give counter security for the relief of the surety, or whether it will require its receiver to institute suit upon the bond, and prosecute the same with due diligence to judgment and execution. The surety will thus be amply protected, without loss or damage to ' the parties primarily interested in the fund; but if it shall be held that the surety is released from his contract by the failure of the receiver to sue after notice in the country, without the knowledge of the court or the parties, concerned, the result will be a fatal blow to, the most valued securities taken by courts of equity for the preservation of trust funds.
The present case is an illustration of the-mischief which must flow from the doctrine advanced by the defendants’ counsel. It is claimed that the notice to the receiver was given in 1866, upon the testimony of *a single witness, who says he served a copy upon the receiver. The latter is dead, and no explanation from him can be had. It does not appear — it is not pretended that the court or the parties entitled to the fund were notified or had reason to believe that any such notice was given, or that the surety would claim to be released on any such ground. •
During all this time, no doubt every body concerned regarded this bond as a valid and solvent security, so that no effort was made to hold the receiver liable for his supposed misconduct. And now upon this notice given in 1866. utterly unknown to everybody interested, given to an agent of the most limited power, we are told the surety is released, and the debt as to him is extinguished. I cannot give my assent to the doctrine, and upon this ground alone I should go for reversing the judgment of the court below.
But this is not the only ground. It is conceded that the receiver had no authority to collect the money, or to take any step with reference to it, until he gave bond with one or more sureties in the clerk’s office in the penalty of $14,000 for the faithful discharge of his duties.
It was of course necessary, that the bond should be accepted and approved by the clerk. What evidence have we that this was done? The testimony of a single witness, who being asked in leading terms “whether he ever became the security of John D. Davis in a bond executed by him as receiver in the suit of Waugh v. Waugh,” answers “yes;” and this is all we have. Whether this bond was approved and received by the clerk; whether it had been given when this notice was served, we are not informed.
On the other hand, the clerk of the court being examined, states that he had searched the records of his office, and could find no bond executed by Davis as ^receiver; that he had no recollection that any such bond had ever been filed in his office, or brought to him for acceptance and approval. Upon such testimony as this, it cannot be fairly presumed that the receiver had ever firen the bond; and his failure to sue orto take any steps for the collection of the money, confirms the presumption that he had not complied with this provision of the decree, and was not authorized to proceed in the matter. Tf the defendant insists upon the forfeiture, it is incumbent upon him to bring himself within the rule which requires satisfactory proof of everv fact, necessary to show a right of action in the receiver.
I think he has not done so, and upon this *578 additional ground, the judgment must be reversed, and judgment entered for the plaintiffs in error.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court erred in rendering judgment upon the demurrer for the defendant in error, Henry E. Smith. It is therefore considered by the court that said judgment be reversed and annulled, and that the said defendant in error do pay to the plaintiff in error his costs by him expended in the prosecution of his writ'of error and supersedeas aforesaid here.
And this court proceeding to render such judgment as the said circuit court ought to have rendered, it is considered by the court that the plaintiff in error recover against the defendant in error, Henry E. Smith, *the sum of $1,335, with interest thereon from the 25th day of February, 1860, till paid, the debt in the declaration mentioned, and his costs in the said circuit court expended.
Judgment reversed.